*593 OPINION.
Van Fossan:
The question before us in this case is whether or not the Nutt-House-Bradley Syndicate was an association taxable as a corporation.
An association is an unchartered organization employing the characteristics, form and procedure of a corporation in the prosecution of a business enterprise. The test to be applied is pragmatic. Did the syndicate in its purpose, form and operations so resemble a corporation that it should be taxed as such? In Anna M. Harkness, 1 B. T. A. 127, we said: “ It seems to us to be fundamentally unsound to determine income-tax liability by what might have taken place rather than by what actually occurred.” So in this case.
There are three parties in the picture before us — (1) the Van Sweringen Co., the original owner of the property involved, which company in the course of developing and marketing the land had become deeply involved and was unable to proceed without financial assistance; (2) the trustee, the First Trust & Savings Co. (later the Union Trust Co.), to which the property was transferred under the Mortgage and Trust Agreements; and (3) the syndicate which purchased or underwrote a large block of the new notes of the Van Sweringen Co.
After the perfection of the several parts of the refinancing plan the Van Sweringen Co., which, under the Plan, had leased, from the trustee the lands trusteed and had options to repurchase the same -on stated conditions, continued its usual real estate operations, developed, subdivided, improved and sold the lots, completed the rapid transit line and in all respects functioned as before the Plan was adopted.
The trustee executed such releases and other papers as were necessary to accomplish the sales negotiated by the Van Sweringen Co. and received and distributed such moneys as properly came into its hands.
The syndicate which, by the terms of its creating agreement, had constituted three members irrevocably as syndicate managers, did *594 nothing beyond signing the creating papers, contributing the agreed funds and ordering and accepting the distributions from the trustee. These distributions of profits were severally returned for income-tax purposes by the members of the syndicate.
During all of the period involved the Van Sweringen Co. was in possession of the property and dealt with the same as though it were the absolute owner thereof. Purchasers of lots dealt only with the Yan Sweringen Co. and knew no other parties.
Except as indicated, the syndicate managers engaged in none of the activities comprehended or permitted by the Plan. They contributed their names and credit to the movement which had as its objective the resuscitation of the Yan Sweringen Co. The syndicate managers never organized, had no meetings, kept no records or books of account, never had an office and had no connection with the sale of real estate. They took no part in creating or formulating the Plan or its several parts or, except to the very limited extent indicated, in its execution. The creation of the syndicate and the designation of the syndicate managers was merely a formal step in the Plan useful only in that the members underwrote or purchased more than $2,000,000 worth of the Yan Sweringen notes. It was never intended that the syndicate should, nor did it in fact, take over the real estate activities of the Van Sweringen Co. Its sole function was that of providing temporary financial backing.
We are not concerned with the fact that the land trust certificates were nontaxable in Ohio and that this was the reason for the adoption of this method of refinancing. We are concerned, however, with the activities engaged in by the syndicate. Actual performance rather than potential capacity is the proper criterion.
We think it clear from what we have said that the Nutt-House-Bradley Syndicate did not engage in or carry on the real estate business. That was solely the province of the Van Sweringen Co. after the adoption of the Plan, as before. Likewise, we are not impressed by the suggestion of counsel for the Government that the syndicate was engaged in the banking business. Not every investor or lender of money is engaged in the banking business. Viewing the facts as they were, we are of the opinion that the syndicate was not engaged in any business enterprise within the intendment of the statute as defined above.
Concluding, as we do, that the syndicate was not engaged in any business enterprise, it follows per necessitate that it did not employ the forms and procedure usually followed by incorporated bodies in carrying on a business'. Assuming a contrary conclusion, however, the form and limited activities of the syndicate bear slight resemblance to a corporation. The syndicate managers were irre *595 vocably appointed and were in no wise amenable to the syndicate members. The members of the syndicate agreed to share losses ratably proportionate to their contributions. The managers never met, never organized, and had neither office, books, nor accounts. They had no officers or employees. They were consistently inactive. In none of these things did they resemble the usual corporate form or procedure. See Gonzolus Creek Oil Co., 12 B. T. A. 310; Extension Oil Co., 16 B. T. A. 1028; Wilson Syndicate Trust, 14 B. T. A. 508, and cases therein cited.

Judgment will be entered for the fetitioner.